## CIRCUIT COURT OF THE CITY OF RICHMOND

Russell Patton Davis

v.

George F. Allen, Jr.,
Governor of Virginia

December 23, 1997

Case No. LC-2153

BY JUDGE RANDALL G. JOHNSON

This case is before the court on respondent's demurrer, motion for summary judgment, and motion for sanctions. The petitioner is Russell Patton Davis, an economist and software engineer. The respondent is George F. Allen, Jr., the Governor of Virginia. A hearing was held on November 19, 1997. The Governor appeared by counsel. There was no appearance by petitioner.

Petitioner has designed computer software to determine applicants' eligibility for programs administered by the Virginia Department of Social Services (DSS). Since DSS developed its own program and conducted no active procurement process, it has repeatedly declined to purchase petitioner's products and services since 1992. Since September 1992, petitioner has made over forty requests under the Virginia Freedom of Information Act (FOIA), Va. Code §§ 2.1-340 to 2.1-346.1. His latest requests to Governor Allen (mailed on August 3 and 4, and September 1, 1997) sought copies of certain records and documents related to the eligibility for, application to, cost structure of, and automation or privatization of DSS services. Governor Allen responded to the requests on August 12 and September 15, respectively. The August 12 letter succinctly stated:

[t]here are no documents in the Governor's office concerning the information you are requesting. I would also add that the Governor's office does not review or evaluate solicitations for state contracts, such as you have repeatedly sent. That is the responsibility of the specific agency from which you are soliciting business. Your prior solicitations for contracts were forwarded to the appropriate agency.

Letter from Mark C. Christie, Office of the Governor, to Russell P. Davis, dated August 12, 1997.

After the Governor's office forwarded Mr. Davis' correspondence, DSS responded to him on August 21, 1997. DSS forwarded a copy of an "ADAPT" training contract in response to petitioner's FOIA request number 5. The other items requested were identical to petitioner's January 20, 1997, FOIA request to DSS, which was replied to on February 4. In sum, DSS maintains that all of the information pertaining to petitioner's FOIA request(s) has been forwarded to him. Letter from Clarence H. Carter, Commissioner, Department of Social Services to Russell P. Davis dated August 21, 1997.

Previous FOIA requests were made to either DSS, the Office of the Secretary of Health and Human Resources, or the Office of the Governor. In addition, petitioner has filed two FOIA requests with two judges of this court, inquiring as to the circuit court's jurisdiction and obligation to rule on his petitions. Finally, petitioner recently filed a FOIA request with the clerk of court seeking the court's "fee structure for its services."

Petitioner's repeated FOIA requests are linked to a series of six petitions for writ of mandamus (including the current petition) filed with this court and the General District Court of the City of Richmond from 1994 through 1997. Each petition concerned the exact same issue and each has been denied and dismissed. Petitioner appealed this court's 1996 denial of his petition. The Supreme Court of Virginia found no reversible error. Petitioner also filed a petition for writ of mandamus and prohibition in the Supreme Court against Judge T. J. Markow of this court and Judges William L. Wimbish and D. Eugene Cheek of the General District Court of the City of Richmond. That petition was dismissed on September 18, 1997.

*I. Demurrer*

The court's duty on demurrer is to take all material facts properly pleaded as true and then determine whether they are sufficient to state a cause of action. *See Lentz v. Morris*, 236 Va. 78, 80, 372 S.E.2d 608 (1988); Va. Code § 8.01-273. "[T]he facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Id.* (quoting *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717 (1988)).

Governor Allen contends that he has responded to petitioner's FOIA requests by forwarding the inquiries to DSS for its response. The Governor also asserts that he may legally withhold certain records from public inspection. Specifically, he cites Va. Code § 2.1-342(B)(4), which shields from FOIA scrutiny memoranda, working papers, and correspondence held by or requested from the Governor's office. DSS collected all other relevant documents in its possession (most recently a copy of the ADAPT training contract) and delivered them to petitioner.

Next, the Governor maintains that he is not the "custodian" of the records requested by petitioner. Va. Code § 2.1-342(A) states that "[a]ny *public body* covered under the provisions of this chapter shall make an initial response to citizens requesting records open to inspection within five work days after the receipt of such request by the public body which is the *custodian* of the requested records." (Emphasis added.) The term "public body" is defined as:

> any legislative body, authority, board, bureau, commission, district or agency of the Commonwealth or any political subdivision of the Commonwealth, including cities, towns or counties; municipal councils, governing bodies of counties, school boards, and planning commissions; boards of visitors of state institutions of higher education; and other organizations, corporations or agencies in the Commonwealth, supported wholly or principally by public funds.

Va. Code § 2.1-341.

Here, the public body serving as the custodian of the records requested by petitioner — that is, records pertaining to automated systems and services utilized by DSS — is DSS itself. The expansive language of the definition section indicates that the Governor is not the custodian of records for each and every public body in the Commonwealth. He is not even included in the statutory definition of public body. Nonetheless, the Governor's of-

fice requested that DSS fulfill petitioner's request for records, except those records that the Governor claims to be privileged.

Petitioner's assertions that DSS has a "serious conflict of interest" and that respondent should be made to produce the requested DSS records are insufficient to overcome the fact that the Governor has made timely response to petitioner's request, that the Governor is not the "public body" having custody of the records, and that the Governor has no legal obligation under FOIA to take any further action. Even if the Governor did possess such information, he may properly shield it from public disclosure pursuant to the exclusions of § 2.1-342(B)(4).

In the last general district court order concerning Mr. Davis' numerous petitions for writ of mandamus, Judge Cheek determined that Governor Allen has complied with his statutory obligations:

> FOIA does not entitle a person to absolute access to requested records . . . Governor Allen has provided the records and information sought by Davis and has properly claimed a statutorily authorized exemption . . . . [F]urther, although the Virginia General Assembly enacted the FOIA to avoid an "atmosphere of secrecy" by governmental entities, this policy is not absolute, and the Virginia General Assembly has identified instances in which certain information is exempt from mandatory disclosure . . . .

*Davis v. Allen*, No. 97-28059 (Richmond Gen. Dist. Ct., May 16, 1997).

This court agrees with Judge Cheek's findings. In addition, Va. Code § 2.1-346 provides:

> The petition [for mandamus to enforce FOIA] shall allege with reasonable specificity the circumstances of the denial of the rights and privileges conferred by this chapter.

As the petitioner has not stated sufficient facts to support his allegations of non-compliance by the respondent — which is a prerequisite to the grant of a petition for writ of mandamus — the demurrer is sustained on both counts.

Finally, at least on the demurrer, the Governor argues that the petition is barred by the doctrines of res judicata and collateral estoppel. Such defenses may properly be raised by demurrer. *Martin v. Martin*, 167 Va. 206, 211-212, 188 S.E. 148 (1936).

Under the doctrine of res judicata, a final judgment on the merits in one suit bars a subsequent suit involving the same parties or their privies based on the same cause of action. Collateral estoppel, on the other hand, is more narrow. Generally speaking, collateral estoppel bars the same parties or their privies from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated and determined in the prior suit.

*Azalea Drive-In Theatre, Inc. v. Sargoy*, 394 F. Supp. 568, 572 (E.D. Va. 1975).

Contrary to petitioner's strongly worded objection, the subject of the instant petition for writ of mandamus — whether Governor Allen may be compelled to disclose certain DSS records pursuant to a FOIA request — has been previously litigated by petitioner against Governor Allen and/or the DSS Commissioner on *five* prior occasions. Each Petition was denied. An appeal of one ruling was refused by the Supreme Court. Thus, the issue underlying the instant cause of action has been settled between these parties on numerous occasions by prior court rulings in favor of respondent. The Governor's compliance with FOIA as it pertains to DSS automation has already been determined and may not be relitigated here. In light of the court's ruling on demurrer, respondent's motion for summary judgment is not addressed.

## II. *Sanctions*

Respondent contends that petitioner's multiplicity of FOIA requests and petitions for writ of mandamus are an abuse of the FOIA enforcement remedies of Va. Code § 2.1-346 and a violation of the pleading requirements of § 8.01-271.1. The signature of an attorney or party constitutes a certificate by him that: "(i) he has read the pleading, motion, or other paper [and] (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law . . . ." Va. Code § 8.01-271.1. Moreover:

A trial court has the power to sanction a pro se litigant who files pleadings or motions "for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." The sanction ordered by the trial court "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading [or]

motion ... including a reasonable attorney's fee." Code § 8.01-271.1 has two primary purposes: (1) to "protect litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims and against the assertions of claims for improper purposes" and (2) "to protect courts against those who would abuse the judicial process."

*Sanchez v. Sanchez*, No. 0195-97-4, 1997 Va. App. LEXIS 726, *5 (Va. Ct. App. Nov. 25, 1997) (citation omitted).

Respondent argues that petitioner's current petition is frivolous, not well grounded in fact or law, not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and filed for an improper purpose, that is, to harass the respondent and other government officials. The court agrees. In light of the numerous rejections of petitioner's prior, identical petitions by various courts and judges of the Commonwealth, it is obvious that his continued invocation of the same cause of action is merely for the purpose of harassing and annoying the respondent. As discussed above with regard to demurrer, petitioner's pleadings are clearly insufficient on their face to state a claim. There is no basis for petitioner to assert that the present petition is well grounded in fact and warranted by existing law.

In his own words, petitioner acknowledges that:

This actual controversy has come before the Commonwealth's Courts in Richmond some six or more instances in which the petitioner sought justice and justice eluded the petitioner in that, to the petitioner's perception, the Courts did not take note of the law. *This actual and ongoing controversy will be continuously recast until the substance of this requested Declaratory Decree is made clear to the Courts, the Governor, and the petitioner.*

Motion for Declaratory Decree, at 17 (emphasis added).

In light of petitioner's repeated filings in this and other courts of the Commonwealth over the same matters that have been repeatedly rejected, the court will grant respondent's request for sanctions. A sanction in the amount of $1,500 will be ordered. This amount will reimburse the Commonwealth for its efforts in responding to the petition and should also serve as a warning to petitioner and others that the court will not tolerate litigation solely designed to harass. The court, however, will not grant respondent's request to prohibit future filings by petitioner. As frivolous as the

present petition is, the court will not prevent future filings since the next petition or case may not be frivolous. Each case must be judged on its own merits. Petitioner should know, however, that the court will impose sanctions, probably increasing in amount, for future baseless filings.